```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA
                              CASE NO. 09-Cv-61740-COHN
                                    (07-Cr-60149-COHN)
                              MAGISTRATE JUDGE P. A. WHITE
```

RICKY JACKSON,              :

    Movant,             :

v.                          :          REPORT OF
                                    MAGISTRATE JUDGE
UNITED STATES OF AMERICA,   :

    Respondent.         :
_____

## I. Introduction

This matter is before this Court on Ricky Jackson's motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentence for possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. §§922(g)(1) and 924(e), entered following a guilty plea in case no. 07-Cr-60149-Cohn.

The Court has reviewed the motion and memorandum in support thereof (Cv DE# 1-2); the government's response (Cv DE# 9), Jackson's reply to the response (Cv DE# 10), the Presentence Investigation Report (PSI); and all pertinent portions of the underlying criminal file.

Construing the arguments liberally as afforded pro se litigants pursuant to Haines v. Kerner, 404 U.S. 419 (1972), the movant asserts

> **Claim 1**: Ineffective assistance of counsel for failing to subpoena witnesses to testify at the suppression hearing;
>
> **Claim 2**: Ineffective assistance of counsel for failing to properly question the government's witnesses at the

suppression hearing.

**Claim 3**: Ineffective assistance of counsel for failing to object to the entry of the consent to search form executed by Jackson.

**Claim 4**: His enhanced sentence as an armed career criminal was imposed in violation of the Constitution because his prior conviction for felony battery is not a qualifying predicate offense under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. §924(e), in light of Johnson v. United States, 130 S.Ct. 1265, 176 L.Ed.2d 1 (March 2, 2010).

## II.   Facts and Procedural History

Jackson was charged by indictment with possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. §§922(g)(1) and 924(e).  Jackson filed a motion to suppress evidence seized by and statements made to law enforcement on April 3, 2007, June 1, 2007, and June 21, 2007. (Cr DE# 27, 36).  The government filed a response in opposition to the motion. (Cr DE# 30).  An evidentiary hearing took place before a magistrate judge on August 30, 2007.  (Cr DE# 46).  In United States v. Jackson, 292 Fed. Appx. 770, 2008 WL 4132034 (11 Cir. Sept. 8, 2008), the Eleventh Circuit summarized the factual and procedural history in this case.

>     Jackson was indicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Jackson filed a pre-trial motion to suppress physical evidence seized on 3 April 2007 and 21 June 2007, as well as statements that he made to law enforcement officers on 3 April 2007, 1 June 2007 and 21 June 2007, and also requested an evidentiary hearing. Jackson argued in his motion that his statements made to federal agents on 1 June 2007 during the canvassing of his neighborhood and after his arrest on federal charges on 21 June 2007 are inadmissible, since they were made after his Sixth Amendment right to counsel had attached in a state case based upon the same offense. Jackson also raised arguments concerning the admissibility of evidence seized and statements made to Florida state police officers on 3 April 2007, which are not raised on appeal.

At the evidentiary hearing before a magistrate judge concerning Jackson's motion to suppress, Florida Police Officer Aaron Burk testified that on 3 April 2007 he went to the area of Jackson's residence in response to a 911 call concerning a gun being fired outside of a residence. Officer Burk testified that Jackson flagged him down, and following a conversation concerning a .38 that Jackson said he had shot in the air, Jackson was placed in handcuffs and advised of his <u>Miranda</u> rights, which Jackson waived. The officer said Jackson consented to a search with Jackson of his residence for injured persons, during which the officer saw the grip of a shotgun protruding from underneath the bedsheets. A background check by the officer revealed Jackson was a convicted felon. Jackson went to state court the day after the shooting, was appointed counsel to represent him in the pending state matter on 16 May 2007, and the state charges were not dismissed until 29 June 2007.

Federal Special Agent DeVito testified that, during her investigation of Jackson for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for a firearms violation by a felon, she went to Jackson's neighborhood on 1 June 2007 to canvas the neighbors concerning the shooting described above, without intending to contact the defendant. Agent DeVito testified that, while she was speaking to the neighbor who lived directly across from Jackson, Jackson exited his residence and approached the group. She testified that she did not call him over to them, and when he was a few feet away she asked him whether he was Ricky Jackson, which he confirmed. Agent DeVito identified herself as an agent with the ATF and told him they were in the neighborhood to find out if anyone had witnessed what happened April 3rd regarding a shooting in his backyard, to which he replied "oh, you mean, when I shot in my backyard?" R3 at 51-52. Agent DeVito testified that he admitted to shooting a shotgun into the air, hiding the gun completely under his bedspread, speaking to police officers that arrived on the scene, and allowing them to go into his house to look for injured people, after he had initially refused saying they needed a search warrant to go in the house. He also told her that the police officers found the gun during the walk-through. She did not take him into custody during this conversation, which primarily took place in front of his residence. Jackson invited the federal agents into his backyard and residence to show them how and where the events of April 3rd had occurred. Agent DeVito testified that (1) she did not ask him whether he had a lawyer, (2) call his lawyer, or (3) advise him he had the right to have a lawyer present while she questioned him, and it did not occur to her that he may have a lawyer until after she left his residence, although she was aware there was a state proceeding going on against him.

Agent DeVito also testified concerning the arrest of Ricky Jackson on federal charges on 21 June 2007, stating that, after he was taken into custody by the ATF, he was advised of his rights, which he waived by signing a form. Agent DeVito testified that, following the execution of the form, Jackson did not indicate that he no longer wished to speak with police. She testified that, while Jackson was in custody, he discussed in more detail the events on the night of the shooting, describing how he shot his shotgun into the air once to scare loiterers away, that he made up the story he told to the Florida police officers about having a .38, how he agreed to allow the police officers to go into his house to look for injured people, and that he also saw a portion of the shotgun sticking out of the bedspread when he went through the house with the police officer. She testified that Jackson told the federal agents about two boxes of ammunition he had purchased and signed a form consenting to the search of his residence for the ammunition, which federal agents retrieved from his residence.

Jackson testified that when Agent DeVito visited his neighborhood on 1 June 2007, he walked over to Agent DeVito to get a closer look at her. He said that, when he walked over to Agent DeVito, she asked him whether he minded answering a few questions, and he said he would answer any question she wanted. When Jackson was asked about signing the waiver form given to him by federal agents on 21 June 2007, Jackson testified that he would do anything with her, and that, yes, he signed the form.

At the hearing Jackson, through counsel, argued that the statements he made to federal agents must be suppressed, since the federal and state charges were identical and concerned the same offense, his right to counsel attached to the offense and the federal agent knew or should have known that he was already represented by counsel for this offense. Jackson also argued that it was not sufficient to "Mirandize" him on 21 June 2007, since he was represented by counsel, and they should have specifically discussed the fact he had a lawyer and ask him whether he wanted that lawyer present. Id. at 131-132. In a "Notice of Supplemental Authority in Support of Motion to Suppress," which was filed after the evidentiary hearing, Jackson noted that the Supreme Court held in Texas v. Cobb, 532 U.S. 162, 172-173, 121 S.Ct. 1335, 1343, 149 L.Ed.2d 321 (2001), that the Sixth Amendment right to counsel attaches to offenses that, even if not formally charged, would be considered the same offense under Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

The magistrate issued a report and recommendation ("R & R") [Cr DE# 47] recommending, among other matters, the denial of Jackson's motion to suppress his statements to federal

4

agents on 1 June 2007 and 21 June 2007, since Jackson's right to counsel had attached only in connection with the state charges and Jackson had initiated the June 1 conversation with the federal agents. Jackson objected to the magistrate judge's findings, arguing that at the time he was questioned by federal agents his right to counsel had attached in connection with the state and federal charges, since both charges had essentially the same elements. The government responded, urging the application of dual sovereignty to the Sixth Amendment right to counsel issue.

The district court adopted the R & R and denied Jackson's motion to suppress, since his right to counsel had only attached in the state case. [CR DE# 42].

Jackson entered a written plea agreement under which he agreed to enter a guilty plea. (Cr DE# 47). The plea agreement incorporated by reference and attached a Written Reservation of Right to Appeal Adverse Determination of Defendant's Motion to Suppress, signed by Jackson, defense counsel, the prosecutor, and Judge Cohn. (Cr DE# 48).

Prior to sentencing, a PSI was prepared which revealed as follows. The PSI set the movant's base offense level at 24, pursuant to U.S.S.G. §2K2.1(a)(2), because the offense involved the possession of a firearm by a convicted felon and the defendant committed the offense subsequent to sustaining two felony convictions of either a crime of violence or a controlled substance offense. (PSI ¶17).

The probation officer further determined that the movant was subject to an enhanced sentence as an armed career criminal pursuant to U.S.S.G. §4B1.4(a), because the movant had three prior convictions for violent felonies in state court. (PSI ¶23). The probation officer relied on the following prior state court convictions: aggravated battery in case no. 88-007992CF10A, manslaughter with a deadly weapon in case no. 89-009948CF10A, and felony battery and aggravated assault with a firearm in case no.

00-016360CF10A. (PSI ¶¶23, 34, 35, 39). Pursuant to U.S.S.G. §4B1.4(3)(B), the offense level was increased to 33. (PSI ¶23). Three levels were then deducted, pursuant to U.S.S.G. §3E1.1, based on the movant's timely acceptance of responsibility, resulting in a total offense level of 30. (PSI ¶24-26).

The probation officer next determined that the movant had a total of 11 criminal history points, resulting in a criminal history category V. (PSI ¶40). The PSI further noted that because Jackson had been identified as an armed career criminal pursuant to U.S.S.G. §4B1.4, his criminal history category remained V pursuant to U.S.S.G. §4B1.4(c)(1). (PSI ¶41).

Pursuant to 18 U.S.C. §§922(g)(1) and 924(e)(1), the minimum term of imprisonment is 15 years and the maximum term is life. (PSI ¶83). Based on a total offense level 30 and a criminal history category V, the movant's resulting guideline range was 151 to 188 months in prison. (PSI ¶84). However, pursuant to U.S.S.G. §5G1.1(b), the guideline range was set at 180 months to 188 months. (PSI ¶84).

On November 30, 2007, the movant appeared for sentencing. (Cr DE# 22). The court sentenced him to a term of 180 months in prison followed by three years supervised release. (Cr-DE# 50, 56).

The movant appealed. (Cr DE# 51). The Eleventh Circuit affirmed the movant's conviction and sentence in a written, but unpublished opinion. United States v. Jackson, 292 Fed.Appx. 770 (11 Cir. Sept. 8, 2008). Jackson filed a petition for writ of certiorari in the Supreme Court, which was subsequently denied. Jackson v. United States, 129 S.Ct. 961, 173 L.Ed.2d 153, 77 USLW 3398 (U.S. Jan 12, 2009).

On October 20, 2009,[1] Jackson filed motion to vacate his sentence pursuant to 28 U.S.C. §2255 and memorandum in support thereof, wherein he alleged claims 1 through 3. (Cv-DE# 1). The government filed a response (Cv DE# 9) and Jackson filed a reply to the response (Cv DE# 10). Jackson then moved for leave to amend and supplement his motion to vacate to add claim 4. (DE# 11). This court issued an order granting the motion for leave to file an amendment and supplement to add claim 4, and directing the government to address this issue in a supplement to its response and discuss the timeliness of this leave to amend and any other applicable procedural bars. (DE# 12). The government filed a response to this order wherein it addressed the merits of Jackson's fourth claim. (DE# 13). Jackson subsequently filed a document entitled "supplement to motion to vacate." (DE# 14).

### III.   Standard of Review

The law is clear that section 2255 authorizes a prisoner to move a sentencing court to vacate, set aside, or correct a sentence where "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. §2255(a); see also, Hill v. United States, 368 U.S. 424, 426-27 (1962). "A sentence is otherwise subject to collateral attack where there is an error constituting a 'fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Jones, 56 F.3d 62 (4 Cir. 1995)(citations omitted).

---

[1] The government concedes that Jackson's motion was timely filed.

In order for the movant to prevail on a claim of ineffective assistance of counsel, he must establish that 1) his counsel's representation fell below an objective standard of reasonableness; and 2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995).

Review of counsel's conduct is to be highly deferential, Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992) ("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11 Cir. 1992). Because a "wide range" of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.2d 384, 386 (11 Cir. 1994).

## IV. Discussion

In **claims 1 through 3**, Jackson argues that his counsel was ineffective during the suppression hearing for various reasons, namely, for failing to subpoena witnesses, failing to properly question the government's witnesses, and failing to object to the entry of the consent to search form executed by Jackson.

8

Jackson is entitled to no relief on these grounds. The denial of the suppression motion was affirmed on direct appeal in <u>United States v. Jackson</u>, 292 Fed.Appx. 770 (11 Cir. Sept. 8, 2008). The Eleventh Circuit expressly held:

> Even if we were to conclude that the district erred in denying Jackson's motion to suppress his incriminating statements, the error was harmless beyond a reasonable doubt. <u>See United States v. Turner</u>, 871 F.2d 1574, 1581-82 (11th Cir.1989). In light of the record, even in the absence of his statements to federal agents, the evidence against Jackson would have been sufficient to support his conviction. Jackson does not challenge on appeal that a Florida police officer found a shotgun in plain view in Jackson's apartment during a voluntary search of his apartment and a record check established that Jackson was a felon. Thus, because the record demonstrates that the evidence of guilt was overwhelming, any error in admitting Jackson's statements to federal agents was harmless.

<u>Id.</u> at 776.[2] Had defense counsel taken the steps movant claims counsel failed to take and obtained an order granting the motion to suppress, the outcome of the movant's criminal proceeding would not have been altered. Thus, the movant cannot establish prejudice pursuant to <u>Strickland</u> arising from counsel's failure to pursue these claims at the suppression proceeding.

---

[2] The Eleventh Circuit also held: "Assuming, arguendo, that we were to conclude that the district court erred in finding that Jackson's Sixth Amendment right to counsel had not attached to the federal offense, we would hold that the district court did not err in denying Jackson's motion to suppress his incriminating statements to Agent DeVito on 1 June 2007, since his statements were otherwise admissible. Jackson's statements to Agent DeVito on 1 June 2007 may be considered under our ruling in <u>Gonzalez</u>, since Jackson, on his own initiative, approached Agent DeVito, who identified herself as a federal agent. 183 F.3d at 1324. His voluntary and spontaneous incriminating statements during that conversation*776 are admissible under <u>Cannady</u>, 931 F.2d at 754. Additionally, since this conversation was not the product of a custodial interrogation-during the entire conversation he was free to leave and at no time did he indicate he wished to end the conversation-the incriminating statements he made during that conversation are admissible under <u>Satterfield</u>, 743 F.2d at 849." <u>Id.</u> at 775-76.

9

Under **claim 4**, the movant asserts that the court erred in enhancing his sentence as an armed career criminal on the basis that the movant did not have the requisite prior convictions to support the enhancement.

The movant was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §922(g). A defendant who violates §922(g), and has been previously convicted of three or more offenses which are drug trafficking crimes or crimes of violence, is subject to a minimum prison sentence of 15 years and a maximum sentence of life. See 18 U.S.C. §924(e). The Eleventh Circuit has clearly ruled that §924(e) is merely a sentence enhancement provision, and does not create a separate offense. United States v. Ruo, 943 F.2d 1274, 1275 (11th Cir. 1991); see also United States v . Abernathy, 277 F.3d 1048, 1050 (8th Cir.), cert. den'd, 535 U.S. 1089 (2002)("Abernathy first argues his status as a recidivist with three previous violent offenses under 18 U.S.C. §924(e) should have been submitted to the jury as an element of the offense under Apprendi v. New Jersey . . . Abernathy's argument fails because this issue is not an element of the offense, but is a sentencing matter under Almendarez-Torres.[3]"). Moreover, §924(e) applies automatically, whether or not the government seeks such an enhancement. United States v . Cobia,41 F.3d 1473, 1475 (11th Cir. 1995).

A defendant qualifies as an armed career criminal if the offense of conviction is a violation of 18 U.S.C. §924(e). See U.S.S.G. §4B1.4, App.n.1 (2006). Under 18 U.S.C. §924(e)(1), a defendant is subject to an enhanced sentence if the instant offense of conviction is a violation of 18 U.S.C. §922(g) and the defendant

---

[3]United States v. Almendarez-Torres, 523 U.S. 224 (1998).

10

"has at least three prior convictions for a 'violent felony' or 'serious drug offense,' or both, committed on occasions different from one another." U.S.S.G. §4B1.4, cmt.n.1. The terms "violent felony" and "serious drug offense" are defined in 18 U.S.C. §924(e)(2).

Review of the PSI reveals that the probation officer determined the movant qualified as an armed career criminal pursuant to U.S.S.G. §4B1.4(a) and §4B1.4(b)(3)(B), based on his three prior felonies for crimes of violence and/or serious drug offenses. (PSI ¶23). The probation officer relied on prior state court convictions for aggravated battery in case no. 88-007992CF10A, manslaughter with a deadly weapon in case no. 89-009948CF10A, and felony battery and aggravated assault with a firearm in case no. 00-016360CF10A. (PSI ¶¶23, 34, 35, 39). Jackson argues that his conviction for felony battery does not qualify as a predicate offense. The government correctly counters that the court need not rely on the felony battery conviction as the aggravated assault with a firearm conviction can constitute the third predicate offense. See United States v. Matthews, 466 F.3d 1271, 1276 (11th Cir. 2006)(affirming court's determination that defendant's aggravated battery conviction, aggravated assault conviction, and third-degree burglary conviction were violent felony convictions as defined under the Armed Career Criminal Act); United States v. Austin, 202 Fed.Appx. 445, 447 (11th Cir. 2006).

In light of the foregoing, the District Court properly classified Jackson as an armed career criminal based on his prior convictions for aggravated battery, manslaughter with a deadly weapon, and aggravated assault with a firearm.

V. Conclusion

It is therefore recommended that the motion to vacate entered under 28 U.S.C. §2255 be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 3rd day of January, 2011.

                                              UNITED STATES MAGISTRATE JUDGE

cc:   Ricky Jackson
      Reg. No. 77375-004
      FCI - Coleman (Medium)
      Federal Correctional Institution
      Inmate Mail/Parcels
      P.O. Box 1032
      Coleman, FL 33521

      Joanne Fine
      United States Attorney's Office
      500 E Broward Boulevard
      7th Floor
      Fort Lauderdale, FL 33301-3002